JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
JASON C. PANG (Cal. Bar No. 296043)
MIKAELA W. GILBERT-LURIE (Cal. Bar No. 337339)
Assistant United States Attorneys
      1100/1200/1300 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-1259/2652/5615
      Facsimile: (213) 894-0141
      E-mail:    alexander.schwab@usdoj.gov
                 jason.pang@usdoj.gov
                 mikaela.gilbert-lurie@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>PAUL A. BILZERIAN, et al.,<br><br>     (2)  SCOTT ROHLEDER, and<br>     (3)  IGNITE INTERNATIONAL<br>          BRANDS, LTD.,<br><br>          Defendants. | No. CR 24-569-MEMF-2, 3<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANTS IGNITE INTERNATIONAL BRANDS, LTD. AND SCOTT ROHLEDER'S MOTION TO DISMISS COUNTS ONE THROUGH SIX OF THE INDICTMENT<br><br>Hearing Date: April 10, 2025<br>Hearing Time: 2:00 p.m.<br>Location:     Courtroom of the<br>              Hon. Maame Ewusi-<br>              Mensah Frimpong<br><br>Indictment:    September 26, 2024<br>PTC:           May 7, 2025<br>Trial:         May 19, 2025<br>STA Last Day:  June 2, 2025 |

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Alexander B. Schwab, Jason C. Pang, and Mikaela W. Gilbert-Lurie, hereby files its

opposition to defendant IGNITE INTERNATIONAL BRANDS, LTD. and defendant SCOTT ROHLEDER's motion to dismiss counts one through six of the Indictment (Dkt. 78).

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 1, 2025                    Respectfully submitted,

                                        JOSEPH T. MCNALLY
                                        Acting United States Attorney

                                        LINDSEY GREER DOTSON
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                        _____/s/_____
                                        ALEXANDER B. SCHWAB
                                        JASON C. PANG
                                        MIKAELA W. GILBERT-LURIE
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                 PAGE

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    INTRODUCTION................................................1

II.   STATEMENT OF FACTS..........................................3

      A.    Defendant P. Bilzerian Is a Convicted Felon and
            Vexatious Litigant....................................3

            1.    Defendant P. Bilzerian's Felony Convictions.........3

            2.    Defendant P. Bilzerian's SEC Disgorgement Order......3

            3.    Defendant P. Bilzerian's Many Bankruptcy
                  Proceedings.........................................3

            4.    Defendant P. Bilzerian's Many Contempt Orders........4

      B.    Defendants' Charged Fraudulent Schemes....................7

III.  LEGAL STANDARD..............................................8

IV.   ARGUMENT....................................................9

      A.    The Court Should Reject Defendants' Improper
            Collateral Attack on the SEC Disgorgement Order...........9

            1.    Defendants Cannot Collaterally Attack the SEC
                  Disgorgement Order in This Proceeding................9

            2.    Defendants' "Proof of Harm" Argument Is Incorrect...11

            3.    Other Circuit Courts Have Rejected Defendants'
                  Double Jeopardy Argument Against the SEC
                  Disgorgement Order.................................12

      B.    Count One Alleges a Scheme of Affirmative Concealment....14

      C.    The Court Should Reject Defendants' Improper Factual
            Challenges to Count One................................16

      D.    The Court Should Reject Defendants' Improper Factual
            Challenges to Counts Two Through Six in a Motion To
            Dismiss...............................................17

V.    CONCLUSION.................................................19

1

**TABLE OF AUTHORITIES**

2    DESCRIPTION                                                                PAGE

3    **Cases**

4    Custis v. United States,
5        511 U.S. 485 (1994) ....................................... 1, 9, 10, 11

6    United States v. Garcia,
         2015 WL 13660438 (C.D. Cal. Apr. 28, 2015) ....................... 18
7
     Honeycutt v. United States,
8        581 U.S. 443 (2017) ............................................. 14

9    Hudson v. United States,
         522 U.S. 93 (1997) .............................................. 12
10
     In re Bilzerian,
11       153 F.3d 1278 (11th Cir. 1998) ............................. 2, 4, 12

12   In re Bilzerian,
13       276 B.R. 285 (M.D. Fla. 2002) .................................... 4

14   Kokesh v. SEC,
         581 U.S. 455 (2017) ........................................... 2, 13
15
     Lewis v. United States,
16       445 U.S. 55 (1980) .......................................... 10, 11

17   Liu v. SEC,
18       591 U.S. 71 (2020) ........................................ 2, 13, 14

19   Reiserer v. United States,
         479 F.3d 1160 (9th Cir. 2007) ................................... 13
20
     Schriro v. Summerlin,
21       542 U.S. 348 (2004) ............................................. 14

22   SEC v. Bilzerian,
         29 F.3d 689 (D.C. Cir. 1994) ........................... 2, 3, 11, 12
23
24   SEC v. Bilzerian,
         112 F. Supp. 2d 12 (D.D.C. 2000) ................................. 4
25
     SEC v. Bilzerian,
26       131 F. Supp. 2d 10 (D.D.C. 2001) ................................. 4

27   SEC v. Bilzerian,
         613 F. Supp. 2d 66 (D.D.C.) ................................... 5, 6
28

1

**TABLE OF AUTHORITIES**

2    SEC v. Bronson,
3        602 F. Supp. 3d 599 (S.D.N.Y. Apr. 29, 2022) ......................11

4    SEC v. Govil,
        86 F.4th 89 (2d Cir. 2023) .......................................14
5
     SEC v. Laura,
6        2020 WL 8772252 (E.D.N.Y. Dec. 30, 2020) .........................11

7    United States v. Bank,
        965 F.3d 287 (4th Cir. 2020) .....................................13
8
     United States v. Barker Steel Co.,
9        985 F.2d 1123 (1st Cir. 1993) ....................................15

10   United States v. Bilzerian,
11       926 F.2d 1285 (2d Cir. 1991) ......................................3

12   United States v. Boren,
        278 F.3d 911 (9th Cir. 2002) ......................................8
13
     United States v. Buckley,
14       689 F.2d 893 (9th Cir. 1982) ..........................2, 8, 16, 17

15   United States v. Concord Management & Consulting LLC,
        347 F. Supp. 3d 38 (D.D.C. 2018) .................................16
16
     United States v. Delgado,
17       592 F. App'x 602 (9th Cir. 2015) .................................10

18   United States v. Dyer,
        908 F.3d 995 (6th Cir. 2018) .....................................13
19
     United States v. Elias,
20       2018 WL 11247848 (C.D. Cal. Jan. 12, 2018) ......................18

21   United States v. Ely,
        142 F.3d 1113 (9th Cir. 1997) ..............................2, 8, 9
22
     United States v. Filice,
23       No. CR 13-8-DLB-CJS-11, 2018 WL 2326616 (E.D. Ky. May 22, 2018) ..14
24
     United States v. Jensen,
25       93 F.3d 667 (9th Cir. 1996) ...................................8, 17
26
     United States v. Jumper,
27       74 F.4th 107 (3d Cir. 2023) ......................................13

28

1

**TABLE OF AUTHORITIES**

United States v. Kanchanalak,
    41 F. Supp. 2d 1 (D.D.C. 1999) ................................... 15

United States v. M.C.E.,
    232 F.3d 1252 (9th Cir. 2000) ................................... 10

United States v. Murphy,
    809 F.2d 1427 (9th Cir. 1987) ................................... 15

United States v. Musacchio,
    968 F.2d 782 (9th Cir. 1992) ................................. 8, 17

United States v. Ortiz,
    2018 WL 3304522 (E.D. Pa. July 5, 2018) ......................... 14

United States v. PG&E Co.,
    2015 WL 3958111 (N.D. Cal. June 29, 2015) ....................... 18

United States v. Price,
    51 F.3d 175 (9th Cir. 1995) ..................................... 10

United States v. Sadler,
    77 F.4th 1237 (9th Cir. 2023) ................................... 10

United States v. Stockett,
    270 F. App'x 600 (9th Cir. 2008) ................................ 13

United States v. Varbel,
    780 F.2d 758 (9th Cir. 1986) .................................... 15

United States v. Yang,
    2024 WL 3904063 (D. N. Mar. I. Aug. 23, 2024) ................... 15

**Statutes**

21 U.S.C. § 851(c) .................................................. 10

31 U.S.C. 3711(g) ................................................... 17

Pub. L. No. 99-570 ................................................. 16

**Regulations**

31 C.F.R. § 901.1 .................................................. 17

1              <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3         Former corporate raider and convicted fraudster Paul Bilzerian

4    ("P. Bilzerian") owes the Securities and Exchange Commission more

5    than $180 million ("SEC Disgorgement Order").  To dodge this

6    judgment, defendant P. Bilzerian has renounced his U.S. citizenship,

7    relocated to St. Kitts, and claimed poverty in connection with

8    ongoing SEC proceedings.  To defraud the United States with respect

9    to this judgment, defendant P. Bilzerian conspired with defendants

10   Scott Rohleder and Ignite International Brands, Ltd., to conceal his

11   assets, financial interest in, and control over defendant Ignite, a

12   "lifestyle" company putatively run by defendant P. Bilzerian's

13   internet influencer son.  The three defendants also perpetrated a

14   securities and wire fraud scheme with respect to defendant Ignite's

15   earnings announcements in 2021: namely, to inflate the appearance of

16   defendant Ignite's success, defendants conspired to backdate

17   documents to claim revenues for 2020 for the sale of vape pens to a

18   shell company controlled by defendant P. Bilzerian.[1]

19        In their pending motion to dismiss, defendants Rohleder and

20   Ignite challenge count one by recycling the arguments defendant P.

21   Bilzerian previously raised, unsuccessfully, in other federal courts.

22   As in those prior proceedings, the motion fails for multiple reasons:

23        <u>First</u>, defendants improperly attempt to collaterally attack the

24   SEC Disgorgement Order at issue in count one, but such a claim is not

25   cognizable in this separate criminal case.  <u>See</u> <u>Custis v. United</u>

26   <u>States</u>, 511 U.S. 485 (1994).

27

28        [1] Defendant Rohleder is charged with tax offenses that are not
     the subject of the pending motion.

<u>Second</u>, this Court should follow several other federal appellate courts that have already considered and rejected defendant P. Bilzerian's challenges to the SEC Disgorgement Order, which was based in part on injuries to victims, is remedial in nature, and does not constitute punishment. <u>See</u> <u>In re Bilzerian</u>, 153 F.3d 1278 (11th Cir. 1998); <u>SEC v. Bilzerian</u>, 29 F.3d 689 (D.C. Cir. 1994). Defendants' misinterpretation of the scope of <u>Kokesh v. SEC</u>, 581 U.S. 455 (2017), has already been rejected by several federal appellate courts, and their reliance on <u>Liu v. SEC</u>, 591 U.S. 71 (2020), is legally and factually baseless.

<u>Third</u>, defendants' citations to cases involving allegations of failure to disclose are inapposite because, here, count one alleges defendants took affirmative steps to impede the lawful actions of the SEC in collecting the SEC Disgorgement Order.

<u>Finally</u>, defendants' many factual challenges to counts one through six fail to recognize that, for a motion to dismiss, "[t]he allegations of the indictment are presumed to be true." <u>United States v. Buckley</u>, 689 F.2d 893, 897 (9th Cir. 1982). The Court should reject defendants' request for the Court to take the fact-finding duty away from the jury. An "indictment that sets forth the charged offense in the words of the statute itself is generally sufficient," <u>United States v. Ely</u>, 142 F.3d 1113, 1120 (9th Cir. 1997), and this Court should reject the defendants' attempt to litigate the facts of the case before trial.

## II.   STATEMENT OF FACTS

### A.   Defendant P. Bilzerian Is a Convicted Felon and Vexatious Litigant

#### 1.   Defendant P. Bilzerian's Felony Convictions

In September 1989, defendant P. Bilzerian was convicted of nine counts of securities fraud and sentenced to four years in prison. See United States v. Bilzerian, 926 F.2d 1285, 1302 (2d Cir. 1991).

#### 2.   Defendant P. Bilzerian's SEC Disgorgement Order

Following his criminal convictions, the SEC filed a separate civil action against defendant P. Bilzerian.  Based on the evidence from the criminal trial, defendant P. Bilzerian was found liable for securities fraud.  See SEC v. Bilzerian, 29 F.3d at 691.  Defendant P. Bilzerian was further ordered to disgorge his illegal profits of over $33 million and over $29 million in prejudgment interest (collectively with the accrued interest, the "SEC Disgorgement Order"), both of which were affirmed by the D.C. Circuit.  Id.  In so ruling, the D.C. Circuit found that "others were injured by Bilzerian's deceptions," including investors who paid an inflated price for his stocks "because of his illegal actions."  Id. at 697. The D.C. Circuit also rejected defendant P. Bilzerian's Double Jeopardy claim, finding that "the disgorgement order is remedial in nature and does not constitute punishment within the meaning of double jeopardy."  Id. at 696.

#### 3.   Defendant P. Bilzerian's Many Bankruptcy Proceedings

In 1991, defendant P. Bilzerian filed for bankruptcy in Florida. After seven years of protracted litigation, during which defendant P. Bilzerian attempted to evade the SEC Disgorgement Order, the Eleventh Circuit held that the SEC Disgorgement Order was not dischargeable in

3

1  bankruptcy.  See In re Bilzerian, 153 F.3d at 1282.  In doing so, the

2  Eleventh Circuit rejected the same arguments regarding an alleged

3  lack of victims and Double Jeopardy Clause claim that were previously

4  rejected by the D.C. Circuit.  Id. at 1282-83.

5      In 2001, defendant P. Bilzerian filed for bankruptcy again in

6  Florida, and his bankruptcy petition was dismissed again.  See In re

7  Bilzerian, 276 B.R. 285, 289 (M.D. Fla. 2002), aff'd sub nom.

8  Bilzerian v. SEC, 82 F. App'x 213 (11th Cir. 2003).  In affirming the

9  bankruptcy court's dismissal of defendant P. Bilzerian's second

10  bankruptcy petition, the district court found that "[P.] Bilzerian

11  has been the beneficial owner of substantial assets in the years

12  since the judgment was entered, but he has made no attempt whatsoever

13  to pay the SEC Judgment.  Instead of complying, he has transferred

14  the assets" to ". . . off-shore trusts and family-owned companies and

15  partnerships.  It is clear that he did this purposefully to insulate

16  his assets from the reach of his creditors."  In re Bilzerian, 276

17  B.R. at 289-90.  The district court determined that defendant P.

18  Bilzerian transferred at least $31 million through an offshore family

19  trust and shell companies to evade his creditors.  Id.

20      4.  Defendant P. Bilzerian's Many Contempt Orders

21      After years of refusing to pay the SEC Disgorgement Order,

22  defendant P. Bilzerian was found in contempt.  See SEC v. Bilzerian,

23  112 F. Supp. 2d 12, 28 (D.D.C. 2000), aff'd, 75 F. App'x 3 (D.C. Cir.

24  2003).  The district court found that he had the means to repay the

25  SEC Disgorgement Order, at least in part, but that he was focused on

26  "how to avoid compliance with the Court's order."  Id.  Defendant P.

27  Bilzerian was ultimately ordered incarcerated until he complied with

28  the district court's accounting orders.  See SEC v. Bilzerian, 131 F.

Supp. 2d 10, 18 (D.D.C. 2001), <u>aff'd</u>, 75 F. App'x 3 (D.C. Cir. 2003).
Following his incarceration, the SEC reached a settlement with
defendant P. Bilzerian's wife to turn over some of the assets from
defendant P. Bilzerian's offshore entities.

The district court also appointed a receiver to effectuate the
SEC Disgorgement Order. <u>See SEC v. Bilzerian</u>, 613 F. Supp. 2d 66, 69
(D.D.C.), <u>decision clarified on reconsideration,</u> 641 F. Supp. 2d 16
(D.D.C. 2009), and <u>aff'd,</u> 410 F. App'x 346 (D.C. Cir. 2010). The
district court found that defendant P. Bilzerian "evaded enforcement
of the judgments and continued filing frivolous lawsuits in an effort
to undermine the judgments" and found defendant P. Bilzerian in
contempt again. <u>Id.</u> Due to his constant filing of "frivolous
lawsuits," the district court also barred defendant P. Bilzerian from
"commencing any proceeding in any court" without prior approval from
the district judge, which was later affirmed by the D.C. Circuit.
<u>Id.</u>; <u>SEC v. Bilzerian</u>, 75 F. App'x 3, 4 (D.C. Cir. 2003).

During the receivership, the district court found that defendant
P. Bilzerian repeatedly refused to make required financial
disclosures to the receiver. <u>See SEC v. Bilzerian</u>, CV 89-1854-RCL,
ECF Nos. 1091, 1142. In 2016, the district court granted the
receiver's request to terminate the receivership, though it
explicitly held that the "disgorgement judgments against [Paul]
Bilzerian in this case shall remain in full force and effect." <u>SEC
v. Bilzerian</u>, CV 89-1854-RCL, ECF No. 1201. Although the
receivership was terminated, the SEC continues to pursue the SEC
Judgment in the District of Columbia. As the D.C. district court in
the underlying SEC case found as late as 2018, defendant P. Bilzerian
"has never fully satisfied the money judgment that was entered

against him" and the "receivership was just one of many efforts made" by the SEC to "seek payment of the outstanding judgment." <u>SEC v. Bilzerian</u>, CV 89-1854-RCL, ECF No. 1219.

Although the case was opened in 1989, over 35 years ago, it remains active because defendant P. Bilzerian continues to disregard the district court's orders.[2]  In 2009, the district court found "clear and convincing evidence of Bilzerian's contempt" of its order by filing lawsuits in his own name and directing lawsuits through third-parties. <u>SEC v. Bilzerian</u>, 613 F. Supp. 2d at 70.  In 2010, the district court again found defendant P. Bilzerian in contempt for violating the court's orders. <u>See</u> <u>SEC v. Bilzerian</u>, CV 89-1854-RCL, ECF No. 1091.  The D.C. district judge has also made multiple factual findings over the years that defendant P. Bilzerian continually attempts to "mislead the Court about the status of his finances," "engage[s] in a pattern of deception and financial maneuverings in order to shield his assets from legitimate creditors and from the accounting that the Court had undertaken," and that defendant continues to have "considerable wealth." <u>SEC v. Bilzerian</u>, CV 89-1854-RCL, ECF Nos. 1232, 651.

---

[2] Defendant P. Bilzerian's motion practice has also targeted the Honorable Royce Lamberth, who is assigned to the SEC matter in the District of Columbia.  These filings including a recusal motion predicated on a third-party reporting to Judge Lamberth that "Bilzerian told me that if Bilzerian outlives his wife, Bilzerian intends to go to Washington, murder Judge Lamberth, seek a jury trial, admit the intentional killing, but seek an acquittal on the basis of justifiable homicide.  Bilzerian believes that an all-black Washington, D.C. jury will acquit Bilzerian when Bilzerian tells his sob story of what the government and this Court supposedly did to Bilzerian and his family." <u>SEC v. Bilzerian</u>, CV 89-1854-RCL, ECF No. 1118, at 2-3.  Judge Lamberth ultimately denied the recusal motion. <u>Id.</u>

Defendant P. Bilzerian continues to be found in contempt of the district court's orders to this day.  Just two months ago, in January 2025, the district court again found defendant P. Bilzerian in contempt because he filed a lawsuit in the Eastern Caribbean Supreme Court, including through International Investments Ltd. -- one of the companies the indictment alleges he controlled and used to funnel millions of dollars into defendant Ignite.  See SEC v. Bilzerian, CV 89-1854-RCL, ECF No. 1259.

With interest, the SEC Disgorgement Order now exceeds $180 million.

**B.    Defendants' Charged Fraudulent Schemes**

Relevant to the Motion, and as alleged in the Indictment, defendants Ignite, Rohleder, and P. Bilzerian conspired for several years to conceal defendant P. Bilzerian's control over defendant Ignite and the millions of dollars defendant P. Bilzerian funneled through various companies to capitalize defendant Ignite to dodge the SEC Disgorgement Order.  In addition, defendants Ignite, Rohleder, and P. Bilzerian conspired to mislead investors with respect to defendant Ignite's vape product sales.  The defendants did this by falsely representing the date of a sale of vape products to defendant P. Bilzerian's company International Investments, failing to disclose the fact that International Investments was also controlled by defendant P. Bilzerian, and failing to disclose that the company could only offload the vape products by competing with defendant Ignite.

Trial is set for May 19, 2025.

1    **III. LEGAL STANDARD**

2        When evaluating defendants' motion to dismiss for failure to

3    state an offense under Rule 12(b), "the district court is bound by

4    the four corners of the indictment" and "must accept the truth of the

5    allegations in the indictment in analyzing whether a cognizable

6    offense has been charged." United States v. Boren, 278 F.3d 911, 914

7    (9th Cir. 2002) (cleaned up). "The indictment either states an

8    offense or it doesn't. There is no reason to conduct an evidentiary

9    hearing." Id. "An indictment is sufficient if it contains the

10   elements of the charged crime in adequate detail to inform the

11   defendant of the charge and to enable him to plead double jeopardy."

12   Buckley, 689 F.2d at 896. The question is whether the "indictment

13   adequately alleges the elements of the offense and fairly informs the

14   defendant of the charge, not whether the Government can prove its

15   case." Id. at 897. "[A]n indictment should be: (1) read as a whole;

16   (2) read to include facts which are necessarily implied; and (3)

17   construed according to common sense." Id. at 899. The Ninth Circuit

18   has repeatedly recognized that an "indictment that sets forth the

19   charged offense in the words of the statute itself is generally

20   sufficient." Ely, 142 F.3d at 1120 (citation omitted). In

21   responding to a motion to dismiss, "the government [is] not required

22   to allege its theory of the case or list supporting evidence to prove

23   the crime alleged." United States v. Musacchio, 968 F.2d 782, 787

24   (9th Cir. 1992). There is no summary judgment procedure in criminal

25   cases, nor do the rules provide for such pre-trial evaluation of

26   competing evidence from the parties by the Court, as opposed to a

27   jury. See United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996)

28   (reversing a district court's dismissal of an indictment under Rule

1  12(b), holding that "[t]he district court thus erred in considering

2  the documentation provided by the defendants.  By basing its decision

3  on evidence that should only have been presented at trial, the

4  district court in effect granted summary judgment for the defendants.

5  This it may not do.").

6  **IV.  ARGUMENT**

7        **A.    The Court Should Reject Defendants' Improper Collateral**
          **Attack on the SEC Disgorgement Order**

8

9        Count one alleges that defendants "conspired with one another"

10  to "defraud the United States."  Dkt. 1 at 4.  Because the indictment

11  tracks the language of the statute, count one is sufficient under

12  controlling Ninth Circuit law.  <u>Ely</u>, 142 F.3d at 1120.  In the

13  Motion, defendants improperly attempt to collaterally attack the SEC

14  Disgorgement Order by recycling the same legal challenges that

15  defendant P. Bilzerian has unsuccessfully made to other courts,

16  misrepresenting case law regarding SEC disgorgement orders, and

17  ignoring the fraudulent scheme alleged by the Indictment.  The Court

18  should reject their arguments.

19        1.    <u>Defendants Cannot Collaterally Attack the SEC</u>
               <u>Disgorgement Order in This Proceeding</u>

20

21        The bulk of defendants' arguments for dismissing count one

22  amount to nothing more than an improper collateral attack on the SEC

23  Disgorgement Order.  Such an argument is not cognizable in a motion

24  to dismiss or, for that matter, at any stage of the criminal case.  A

25  criminal statute must provide express authorization for a defendant

26  to collaterally attack a predicate judgment that forms the basis of a

27  criminal charge.  <u>See</u> <u>Custis</u>, 511 U.S. at 494 (1994).  And some

28  criminal statutes do.  Section 1326(d) authorizes collateral attacks

on the validity of underlying deportation orders, and 21 U.S.C. § 851(c) provides a vehicle for assailing prior convictions.  Section 371 does not.

Over and over again, courts have rejected attempts to collaterally attack prior judgments without express statutory authorization.  See Custis, 511 U.S. at 492 ("Absent specific statutory authorization, Custis contends that an implied right to challenge the constitutionality of prior convictions exists under § 924(e).  Again we disagree."); Lewis v. United States, 445 U.S. 55, 60 (1980) ("[T]he firearms prosecution does not open the predicate conviction to a new form of collateral attack" because "nothing thing on the face of the statute suggests a congressional intent to limit its coverage to persons whose convictions are not subject to collateral attack." (cleaned up)); United States v. Sadler, 77 F.4th 1237, 1243 (9th Cir. 2023) (holding that the language of § 922(g) "provided no basis for concluding that a prior conviction is subject to collateral attack for potential constitutional errors before it may be counted" (cleaned up)); United States v. Delgado, 592 F. App'x 602, 603 (9th Cir. 2015) ("SORNA does not authorize such a collateral attack [on the defendant's underlying state sex offense conviction]" because "SORNA does not contain similar language" to § 1326(d)); United States v. M.C.E., 232 F.3d 1252, 1257 (9th Cir. 2000) ("[I]f Congress had intended to allow collateral attacks during § 5032 transfer hearings, it could have so stated in the statute itself—but declined."); United States v. Price, 51 F.3d 175, 177 (9th Cir. 1995), as amended (Apr. 21, 1995) ("The legislation authorizing the Guidelines . . . does not expressly or impliedly provide defendants with an opportunity to challenge the validity of prior convictions

10

before the sentencing court may count them for career offender calculations.").

That is not to say defendants are left without a remedy. Defendant P. Bilzerian has fully availed himself of the opportunity to challenge the SEC Disgorgement Order. SEC v. Bilzerian, CV 89-1854-RCL; see Lewis, 445 U.S. at 60. Allowing his codefendants to relitigate issues fully resolved in two other circuits would frustrate the judicial system's interests in "[e]ase of administration" and "promoting the finality of judgments." Custis, 511 U.S. at 492. By the defendants' logic, they could just as easily use this criminal case to challenge the SEC as a violation of the nondelegation doctrine. Simply put, this is not the right forum.

2.    Defendants' "Proof of Harm" Argument Is Incorrect

In any event, the defendants' legal challenges to the SEC Disgorgement Order fail for the same reasons previously articulated by prior federal courts.

To start, defendants allege that the SEC Disgorgement Order is not predicated on any "proof of harm." (Mot. at 4.) This is incorrect. As the D.C. Circuit already explained in dismissing an identical argument made by defendant P. Bilzerian in the appeal of the SEC Disgorgement Order, "others were injured by Bilzerian's deceptions -- investors paid Bilzerian an inflated price for his stocks because of his illegal actions." SEC v. Bilzerian, 29 F.3d at 697.[3] Moreover, "[i]f Bilzerian had disclosed the truth about his

_____

[3] Following Liu, multiple district courts have allowed disgorgement awards to be directed toward the Treasury even when the judgment did not identify any specific victims. See SEC v. Bronson, 602 F. Supp. 3d 599, 617–18 (S.D.N.Y. Apr. 29, 2022); SEC v. Laura, 2020 WL 8772252, at *5 (E.D.N.Y. Dec. 30, 2020) (Liu "does not

*(footnote cont'd on next page)*

1   stock purchases and source of funding, the market would have

2   discounted his ability to take over the target corporations.  By

3   failing to make these disclosures, Bilzerian created the impression

4   that hostile takeovers were imminent, thereby driving up the price of

5   the target corporations' securities."  Id. at 696-97.

6          3.   Other Circuit Courts Have Rejected Defendants' Double
               Jeopardy Argument Against the SEC Disgorgement Order

7

8          Defendants also argue that the SEC Disgorgement Order

9   constitutes "punishment" and, therefore, is barred by the Double

10  Jeopardy Clause.  This is again wrong.

11         In evaluating the exact same facts, the D.C. Circuit held that

12  defendant P. Bilzerian's "disgorgement order is remedial in nature

13  and does not constitute punishment within the meaning of double

14  jeopardy . . . The district court ordered Bilzerian to give up only

15  his ill-gotten gains; it did not subject him to an additional

16  penalty."  SEC v. Bilzerian, 29 F.3d at 696.  Four years later, the

17  Eleventh Circuit held the same: "A civil remedy following criminal

18  conviction only constitutes 'punishment' for purposes of the Double

19  Jeopardy Clause when it is so severe or so unrelated to remedial

20  goals that it amounts to a second criminal punishment.  While the

21  fraud exception to discharge does have a deterrent goal, it is

22  clearly not 'punitive,' because Bilzerian's disgorgement was

23  explicitly limited to profits resulting from illegal conduct."  In re

24  Bilzerian, 153 F.3d at 1283.

25         Defendants' other miscellaneous arguments concerning the SEC

26  Disgorgement Order also fail.  First, Hudson v. United States, 522

27

28  require that a disgorgement award reflect every individually wronged
    investor's private agreements").

                                  12

U.S. 93 (1997), does not establish that the SEC Disgorgement Order
constitutes a criminal punishment in violation of the Double Jeopardy
Clause; following Hudson, the Ninth Circuit has clearly held that a
"SEC judgment [i]s civil in nature; disgorgement and monetary
penalties are not criminal." United States v. Stockett, 270 F. App'x
600, 602 (9th Cir. 2008); see also Reiserer v. United States, 479
F.3d 1160, 1164 (9th Cir. 2007) (analyzing Hudson factors with
respect to IRS statutes and concluding that there is no Double
Jeopardy risk associated with tax forfeiture orders).

Next, the Supreme Court did not convert disgorgement orders into
criminal penalties in Kokesh v. SEC, 581 U.S. 455 (2017). All the
Supreme Court held in Kokesh is that disgorgement is a civil penalty
in a civil proceeding subject to the statute of limitations "for the
enforcement of any civil fine, penalty, or forfeiture, pecuniary or
otherwise." Id. at 1642 n.3. Civil penalties are not criminal
penalties, and multiple circuit courts have rejected defendants'
argument that Kokesh treats disgorgement orders as the latter. See,
e.g., United States v. Jumper, 74 F.4th 107, 113 (3d Cir. 2023);
United States v. Bank, 965 F.3d 287, 296–97 (4th Cir. 2020); United
States v. Dyer, 908 F.3d 995, 1003–04 (6th Cir. 2018). This Court
should do the same.

Finally, defendants' reliance on Liu v. SEC, 591 U.S. 71 (2020),
is also misplaced. In Liu, the Supreme Court held that a
disgorgement award should "not exceed a wrongdoer's net profits" and
should be "awarded for victims." Id. at 75. Defendants argue the
D.C. district court in 1993 did not reduce the disgorgement amount
equal to the portion of the illegal profits defendant P. Bilzerian
"returned to his investors" and, therefore, improperly exceeded his

13

1  net profits.  (Mot. at 6.)  Even if <u>Liu</u> applied retroactively, the

2  remedy would be a reduction in the disgorgement figure -- not

3  mischaracterizing it as a criminal penalty.  <u>See Liu</u>, 591 U.S. at 92;

4  <u>SEC v. Govil</u>, 86 F.4th 89, 111 (2d Cir. 2023) (remanding an improper

5  disgorgement order for "factual determination").  But it does not

6  apply retroactively.

7       Only substantive rules that "narrow the scope of a criminal

8  statute" or "constitutional determinations that place particular

9  conduct or persons covered by the statute beyond the State's power to

10  punish" apply retroactively to cases that have become final.  <u>Schriro</u>

11  <u>v. Summerlin</u>, 542 U.S. 348, 352 (2004).  In contrast, new "rules of

12  procedure" that "regulate only the <u>manner of determining</u> the

13  defendant's culpability" have no retroactive effect.  <u>Id.</u> at 353

14  (emphasis in original).  By comparison, <u>Honeycutt v. United States</u>,

15  581 U.S. 443, 445 (2017), which restricted the imposition of joint

16  and several liability for forfeiture awards, has no retroactive

17  effect, since "it did not alter the range of conduct punished by

18  federal law, but decided only whether joint and several liability

19  could be imposed as a consequence of that conduct." <u>United States v.</u>

20  <u>Ortiz</u>, 2018 WL 3304522, at *8 (E.D. Pa. July 5, 2018); <u>see also</u>

21  <u>United States v. Filice</u>, No. CR 13-8-DLB-CJS-11, 2018 WL 2326616, at

22  *2 (E.D. Ky. May 22, 2018).  The same logic governs <u>Liu</u> and its

23  retroactive application to defendant P. Bilzerian's SEC Disgorgement

24  Order here.

25       **B.   Count One Alleges a Scheme of Affirmative Concealment**

26       Defendants also argue that count one must be dismissed because

27  it fails to allege any duty to disclose information about defendant

28  P. Bilzerian's involvement with defendant Ignite.  (Mot. at 13-18.)

This is fundamentally a factual claim masquerading as a legal challenge and is therefore not cognizable pretrial. But it also ignores the theory of liability count one charges: "impeding, impairing, obstructing, and defeating the lawful government functions of the SEC" through affirmative action and concealment. (Dkt. 1 at 4, 6.) See United States v. Barker Steel Co., 985 F.2d 1123, 1131-32 (1st Cir. 1993) (reversing a district court's dismissal of a § 371 indictment, holding that "omission can only constitute a crime if the accused had a duty to act. In this case, however, the defendants are charged with defrauding the government by their actions, not by failure to act"); United States v. Kanchanalak, 41 F. Supp. 2d 1, 10 (D.D.C. 1999) (rejecting defendants' arguments that "they had no obligation to report their identity to the FEC or to reveal their identity to the political committees" for liability under § 371 because the indictment "does not charge the defendants with conspiracy to fail to reveal their names" but with "a conspiratorial agreement to use deceptive or deceitful means to prevent the FEC from performing its lawful reporting function"), rev'd on other grounds, 192 F.3d 1037 (D.C. Cir. 1999); United States v. Yang, 2024 WL 3904063, at *7 (D. N. Mar. I. Aug. 23, 2024) (denying a motion to dismiss a § 371 charge for conspiring to "obstruct the government's legitimate function of detecting and removing aliens unlawfully present in the United States" by travelling by sea and using unmonitored ports to avoid government detection).[4]

---

[4] Accordingly, defendants' citation to United States v. Murphy, 809 F.2d 1427 (9th Cir. 1987), and United States v. Varbel, 780 F.2d 758 (9th Cir. 1986), are unavailing because both those cases involved allegations of failure to disclose. Months after Varbel was published, Congress effectively overrode it by statute. See Anti-
*(footnote cont'd on next page)*

15

1      Defendants' reliance on <u>United States v. Concord Management &</u>

2  <u>Consulting LLC</u>, 347 F. Supp. 3d 38 (D.D.C. 2018), demonstrates they

3  are aware of the distinction.  They quote <u>Concord Management</u> for the

4  proposition that "[a] failure to disclose information can only be

5  deceptive -- and thus serve as the basis for a § 371 violation -- if

6  there is a legal duty to disclose the information in the first

7  place."  <u>Id.</u> at 48.  Yet they omit the district court's further

8  holding that "not <u>all</u> conspiracies to defraud the United States by

9  impairing the lawful functions of the FEC and DOJ must allege a legal

10 duty to report or register."  <u>Id.</u> at 51 (emphasis in original).  In

11 other words, failure to disclose information is only one of many

12 ways, including affirmative concealment, that an indictment can

13 properly allege a § 371 violation.

14     Accordingly, count one sufficiently alleges a scheme to defraud

15 the government through affirmative concealment.

16     **C.    The Court Should Reject Defendants' Improper Factual
           Challenges to Count One**

17

18     Defendants further complain that they disagree with count one's

19 factual allegations, including that they believe the SEC no longer

20 has authority to collect the SEC Disgorgement Order and that they did

21 not intend to obstruct the SEC's collection of the SEC Disgorgement

22 Order.  (Mot. at 13-18.)  Again, these factual disputes are

23 irrelevant at this stage, since the Court "shall presume that the

24 allegations of the indictment are true" in evaluating a motion to

25 dismiss.  <u>Buckley</u>, 689 F.2d at 897.  Count one clearly and

26 sufficiently alleges that the defendants "knowingly and willfully

27

28 Drug Abuse Act of 1986, Pub. L. No. 99-570, Title I, § 1354(a), 100
   Stat. 3207-22 (Oct. 27, 1986).

conspired with one another" to "to defraud the United States and agencies thereof, namely, the SEC, by impeding, impairing, obstructing, and defeating the lawful government functions of the SEC with respect to collection of the SEC Judgment by deceitful and dishonest means." (Dkt. 1 at 4). This is sufficient to defeat defendant's motion to dismiss under Rule 12(b). Buckley, 689 F.2d at 896. Defendants will have every opportunity to challenge the government's evidence at trial.[5]

### D. The Court Should Reject Defendants' Improper Factual Challenges to Counts Two Through Six in a Motion To Dismiss

For the same reason, the Court should dismiss defendants' many factual disputes relating to counts two through six. In evaluating a motion to dismiss under Rule 12(b), the Court "shall presume that the allegations of the indictment are true," Buckley, 689 F.2d at 897, and it should reject defendant's improper attempt to take the fact-finding duty away from the jury. Jensen, 93 F.3d at 669 ("[N]or do the rules provide for such pre-trial evaluation of competing evidence from the parties by the Court, as opposed to a jury.").

---

[5] Although "the government [is] not required to allege its theory of the case or list supporting evidence to prove the crime alleged" in response to a motion to dismiss, Musacchio, 968 F.2d at 787, defendants are also incorrect that all "delinquent non-tax debts must be turned over to Treasury for appropriate action to collect the debt." (Mot. at 15.) 31 C.F.R. § 901.1, which implements 31 U.S.C. 3711(g), specifies that the transfer of debt to the Treasury for collection "does not apply" to debts in litigation. Indeed, the SEC continues its attempts to collect the SEC Disgorgement Order. Although defendants allege that the SEC "ceased its apparent efforts to collect" the SEC Disgorgement Order in 2016, they note earlier in the same Motion that an SEC litigator was in negotiations with defendant P. Bilzerian three years later, in 2019. Compare Mot. at 3 (referring to a July 15, 2019 email between an SEC litigator and P. Bilzerian) with (claiming that "the SEC ceased its apparent efforts to collect on Bilzerian's disgorgement judgment" in 2016). The SEC issued subpoenas in furtherance of collecting the SEC Disgorgement Order following the receiver's termination in 2016.

1    In their efforts to shoehorn their factual challenge into a

2  legal argument, defendants claim that the government has "has failed

3  to provide Brady material relating to Company 1's

4  misrepresentations."  In essence, defendants' Brady argument is a

5  claim that the evidence at trial will not prove their guilt, and to

6  the extent the government persists in this prosecution, that is ipso

7  facto evidence that it has hidden exculpatory evidence.  Indulging

8  this argument would empower any criminal defendant to allege a Brady

9  violation merely by declaring his innocence, and the Motion is not an

10  appropriate vehicle for raising discovery disputes.

11    The allegation is also baseless.  Defendants have neither met

12  and conferred with the government about this issue before lodging the

13  discovery claim in the middle of their Rule 12(b) motion, nor did

14  they "state with particularity" the basis for the dispute as required

15  by the Court's Criminal Standing Order.  The government is aware of

16  its discovery obligations and will abide by them.  See United States

17  v. Elias, 2018 WL 11247848, at *1 (C.D. Cal. Jan. 12, 2018) (denying

18  a defendant's request for a subpoena because "defendant has not

19  provided evidence that the government has not acted in good faith in

20  its representations to the Court"); United States v. Garcia, 2015 WL

21  13660438, at *4 (C.D. Cal. Apr. 28, 2015) (denying motion for

22  discovery because defendant "made no showing that such an order is

23  necessary, i.e., that the Government has not already complied with

24  its discovery obligations."); United States v. PG&E Co., 2015 WL

25  3958111, at *14 (N.D. Cal. June 29, 2015) ("[T]he Court presumes that

26  the Government will comply with its Brady obligations and obey the

27  law, absent evidence to the contrary.").

28

18

V.    **CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny the Motion in its entirety.